### No. 6052.

### A. ROCHEREAU VS. MRS. JULES MAIGNAN ET AL.

Where several persons as heirs and legal representatives of a succession under administration are the owners in indivision of a judgment from which a devolutive appeal is pending, the sale of the judgment will not be ordered to effect a partition, on the application of one of the co-owners opposed by the others, when it does not appear that the administrator of the succession has made any effort to execute the judgment; especially in a case where the sale would inure to the benefit of one only of the coproprietors, and to the detriment of the others.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J.*

*Charles F. Claiborne* for plaintiff and appellee.
*John & W. S. Finney* for defendant and appellant.

Charles F. Claiborne, for plaintiff and appellee, contended :

First—That no one can be compelled to hold property in common with another. C. C. 1284. Each coproprietor has a right to a partition, which is made either in kind, when the property is susceptible of a division into parts, or by licitation, when the thing cannot be divided.

Second—That a judgment is not susceptible of division. One of the first principles we learn is : that a judgment is one and indivisible. Succession Bougère, 28 A. not yet reported ; 10 A. 455 ; 12 A. 346 ; 14 A. 329 ; 23 A. 26 ; 25 A. 476, 495.

Finney and Miller, contra, contended :

First—That the sale of a judgment by licitation for the purpose of a partition among heirs is unwarranted. C. C. 1260, 1262, 1287.

Second—That although a judgment for money is not susceptible of actual

partition, it is of division. Rachal et. al. vs. Rachal's Heirs, 10 L. R. 458.

An obligation is divisible where it has for its object a thing which is divisible. C. C. 2104.

Nothing is more susceptible of division than a sum of money, which is the object of the judgment against Maignan. A sum in simple division will accomplish it. C. C. Art. 2107 ; Code Napoleon, 1220.

Third—That there was no opinion of experts nor testimony of witnesses to show that the judgment was indivisible in kind, or that a division would be prejudicial. Lecarpentier vs. Lecarpentier, 5 An. 497 ; 6 An. 754 ; 7 An. 477.

Fourth—That there is no provision in the judgment for an appraisement, as required by Art. 1247, C. C., nor family meeting to fix the terms of sale. C. C. 1263. *In re* Michael Dickson, 6 An. 754.

———

The opinion of the court was delivered by

DeBlanc, J. Mrs. Lobit died, leaving as her legal representatives three children who have attained their majority, and two grandchildren, who both are under age. Her daughter Nellie, and John Pemberton, the husband of said Nellie, were appointed as joint administrators of her succession, and—as such—obtained against Jules Maignan, a son-in-law of the deceased, a judgment for ten thousand dollars in principal.

Henry, one of the legal representatives of Mrs. Lobit, transferred to A. Rochereau—for two hundred and fifty dollars—his interest in that judgment ; and Rochereau—as his transferee—alleges that said judgment is not susceptible of a division in kind, and prays that it be sold, to effect a partition of the same.

His demand is resisted by the mother and tutrix of the minors, who denies the necessity and legality of the intended sale, and charges that its sole object is to procure a sacrifice of the judgment, to the detriment of her wards.

As the parties' counsel, we have diligently searched, but in vain, for a precedent which might assist us in deciding this peculiar controversy, and—to decide it—we have to follow the imperishable landmarks which lead to justice and right.

The Code does provide, as contended by Rochereau's counsel, that no one can be compelled to hold property in common with another, but it does also provide that equality is the base of partition, and that it must be naturally observed between children and lawful descendants, when they divide among them the succession of their parents.

C. C. 1229 (1307)—1398 (1436).

The first of those enactments grants an absolute right—the other guarantees a legitimate protection against the abuse of that right :

and—in order to give effect to both, it seems not unreasonable to conclude, that a sale which would be entirely unavailing to any one of the coheirs or coproprietors, and inevitably detrimental to all, ought—if opposed by any one of them—to be allowed by the court but as a last resort.

In matters of partition, the sale of the common property is generally ordered to prevent a diminution of its value, or to avoid to any one of the owners the loss and inconvenience which would result from its division in kind. C. C. 1339, 1340 (1261, 1262). Could we, under that equitable rule, justly hold that a sale, the inevitable result of which would be to reduce the value of the common property, to divest a title for exclusively the benefit of one of the joint owners, to the detriment of the others, cannot be reasonably postponed, though it were evident that—if untimely made—it would destroy the equality of the partition, and entail on all, but one of the interested parties, loss and inconvenience? This seems doubtful.

Mrs. Lobit's estate is still under administration, and it does not appear, and—to justify the intended sale—it must appear, that those who are administering upon that estate have made an effort to enforce the judgment held in common, and that the debtor has no property out of which it may be satisfied. If he has any, plaintiff can—without purchasing the entire judgment—fully exercise the right which he has acquired from one of the heirs, by compelling the administrators to cause to be seized and sold whatever said debtor may own and which is not exempt from seizure. If he possesses no property which can be reached by a writ, how can plaintiff's interest be affected by continuing to be the joint owner of a barren judgment, the sale of which—unless intended for an unfair speculation, which we would not encourage and sanction—might entail on himself and the defendants useless costs and unproductive expenses ?

Before even an attempt to execute it, the sale of that judgment—which has been devolutively appealed from—its execution cannot be detrimental to the parties, or to either of them. By its execution, the whole amount due may be realized and divided. By the sale, if not provoked to secure an illicit advantage, and this we are not authorized to presume, the interest of every one of the coproprietors in the judgment may be sacrificed, and—if not actually sacrificed—cannot, this is manifest, be subserved or promoted.

Considering—as we do—under the exceptional circumstances of this exceptional controversy,

1. That the succession of Mrs. Lobit is still under administration, and the appeal alluded to still pending ;

2. That the administrators of her succession may be compelled to

issue execution on the judgment, as it is, and for the joint benefit of all;

3. That, without the sale of the judgment, the parties' rights under it may be enforced—not only more rapidly—but with less costs and expenses than otherwise;

4. That any sale of the judgment, before an attempt to execute it, must necessarily be prejudicial to the parties, and can but impair or destroy the equality of the contemplated partition—and

5. That the application to sell—with the certainty of reducing its value—a claim thus judicially acknowledged, and which—on demand, or by seizure—may be converted into money, is at least premature;

It is ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed, and plaintiff's demand dismissed as in case of nonsuit, at his costs in both courts.