LOLLEY, J.
 

 |,In this child custody case, plaintiff, Willard Robertson, appeals the judgment of the First Judicial District Court, Parish of Caddo, State of Louisiana, which found in favor of defendant, Francine Robertson. For the following reasons, we affirm.
 

 FACTS
 

 Willard, an attorney, and Francine Robertson were married in 1990. They have two children, Everett (age 14) and Alex (age 11). In 2005, Francine filed for divorce. In August 2005, the parties entered into a consent judgment which gave shared physical custody of the children and Willard agreed to pay $1,250.00 per month in child support. In addition, Willard agreed to pay most of the children’s expenses including private school tuition, medical insurance premiums and other medical expenses, dental and summer camp fees.
 

 In June 2007, Willard filed suit to modify the custody plan; however, there were no changes pled with respect to child support. Eventually the parties reached a compromise and another agreement, the provisions of which are at issue on this appeal, was confected (the “2007 Agreement”). The 2007 Agreement provided that the previous “shared custody” would be revised to “joint custody” with Willard being designated as the domiciliary parent.
 
 *599
 
 Francine was awarded designated time with the children. Also, in the agreement was Willard’s offer to pay $2,000.00 per month for child support to Francine despite his domiciliary status. Finally, similar to the previous consent judgment, Willard paid all other expenses related to the children. The 2007 Agreement also set forth two unique provisions: 1) the |2parties knowingly deviated from the' Louisiana Child Support Guidelines but agreed this was. in the best interest of the children; and, 2) it allowed
 
 &•
 
 modification to the child support only in the event that Willard became disabled or Francine chose to seek custody. If modification was sought for any other reason, the 2007 Agreement included a sanctions clause against the party seeking the modification.
 

 In May 2008, Willard filed for sole custody but again made no request to terminate or modify the child support arrangement. The parties, eventually, entered into another consent judgment in November 2008 (the “2008 Agreement”) which awarded Willard sole custody. Although not drastically reduced, Francine’s visitations with the children were now on alternating weekends, • with an equal division of holidays and two weeks in the summer. The 2008 Agreement did not modify any other provision, including the child support amount, set forth in the 2007 Agreement.
 

 On December 29, 2008, Willard filed the instant suit to terminate child support obligations and, instead, have Francine pay him child support. Francine reconvened for attorney’s fees and litigation costs under the sanctions clause in the 2007 Agreement. After a contentious pretrial period, the matter was tried on April 27, 2009. The trial court rejected Willard’s demand for termination of child support. It further held that the provision requiring Willard to pay child support, as set forth in the 2007 Agreement, and despite having sole custody, was not against public policy and the agreement, as a whole, was not void. However, the provisions for future modification of child support were “simply too restrictive” making it ^unenforceable and the related sanctions imposed were impermissible. Finally, in light of the increase in Francine’s income creating a material change in circumstances, the trial court found that a decrease in the amount of child support obligation to $1,500.00 was appropriate.
 

 LAW AND DISCUSSION
 

 On appeal, Willard argues that the trial court committed legal error in failing to comply with the statutory procedures for fixing child support. Willard also argues that the trial court committed legal error in ordering the continuation of child support payments despite his sole custody status and instead that Francine should be paying him child support in accordance with the Louisiana Child Support Guidelines.
 

 Francine also raises several issues on appeal. First, Francine argues that the trial court committed legal error in finding her increase in salary warranted a reduction in the amount of child support paid by Willard. Second, she argues that the trial court erred in finding that the sanctions provision in the 2007 Agreement was unenforceable.
 

 In the area of domestic relations, much discretion is vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility.
 
 Mizell v. Mizell,
 
 37,004 (La.App.2d Cir.03/07/03), 839 So.2d 1222. It is also well established that the trial court’s child support judgment will not be disturbed absent a clear
 
 *600
 
 abuse of discretion.
 
 Jones v. Jones,
 
 44,201 (La.App.2d Cir.04/08/09), 6 So.3d |41275. A determination of whether a material change of circumstances has occurred is a question of fact and, therefore, the trial court’s findings in that regard cannot be set aside absent manifest error. That is, we cannot reverse the trial court unless the record contains no reasonable factual basis for the trial court’s finding and establishes that the finding is clearly wrong.
 
 Lewis v. State, through DOTD,
 
 1994-2370 (La.04/21/95), 654 So.2d 311.
 

 Willard’s Issues on Appeal
 

 Here, Willard makes much of the fact that the trial court did not rely on the Louisiana Child Support Guidelines when fixing child support, and specifically points out his sole custody status. In the 2007 Agreement, where Willard was named the domiciliary parent, Paragraph E specifically states:
 

 The child support award referred to herein is not derived by an application of the Louisiana Child Support Guidelines, R.S. 9:315
 
 et seq,
 
 but rather, it is based upon several factors, included but certainly not limited to, the allocation of the physical custody of the children, the time the children spend with each of the parties and the disparity in the economic circumstances of the parties. In the event that the child support awarded-referred to herein should be determined by any Court to be against public policy or otherwise unenforceable for any reason, then in that event, the support payable by Willard Everett Robertson to Francine Abitan Robertson shall be considered to be contractual in nature and for other consideration granted in this Judgment and Joint Custody Implemen-tal Plan and accordingly, shall remain an enforceable provision of this Judgment. Both parties stipulate, acknowledge and judicially confess that the child support awarded herein to Francine Abitan Robertson and the Joint Custody Implementation Plan adopted by this Court contemporaneous with the rendition of the Judgment are both in the best interest of the minor children.
 

 The 2007 Agreement reflects that Willard and Francine established the groundwork in creating a customized child support that the parties |fiadmitted was is in “the best interest” of the children and purposefully did not avail themselves of the Louisiana Child Support Guidelines. We note that a consent judgment is a bilateral contract which is voluntarily signed by the parties and accepted by the court. It has binding force from the voluntary acquiescence of the parties, not from the court’s adjudication.
 
 Gray v. Gray,
 
 37,884 (La.App.2d Cir.12/12/03), 862 So.2d 1097. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046; La. C.C. art. 2051;
 
 Gray, supra.
 
 It is not within the purview of this court to relieve an able party of an obligation which he freely and voluntarily entered into absent evidence of a vice of consent.
 
 Gray, supra.
 

 As the trial court astutely noted in its well-written opinion:
 

 The Court believes that the agreement by Mr. Robertson to pay child support to Mrs. Robertson, even though she was not the domiciliary parent, is legally enforceable under the unique circumstances of this case. The Court fully understands that under the statutory scheme the parent without legal custody or non-domiciliary parent ordinarily pays the other parent his or her share of the total child support obligation as determined under the child support guidelines
 
 (See
 
 La. R.S. 9:315.1,
 
 et seq.).
 
 
 *601
 
 However, the statutory scheme takes into account that there are situations where these procedures and the rebutta-ble presumptions under the guidelines may not apply and deviations are permissible under the law
 
 (See
 
 La. R.S. 9:315.1). Furthermore, the parties clearly acknowledged and judicially confessed this in the detailed consent judgment presented to the court in December of 2007. As recognized by both parties, there is a huge disparity in income and resources available to the two parties. Mr. Robertson is wealthy. Mrs. Robertson is not. As recognized in the judgment, this disparity in income was one of the factors used to deviate from the ordinary statutory scheme. There in nothing legally infirm with Mr. Robertson’s agreement to pay child support so Mrs. Robertson can have the resources to provide and maintain a | (¡comfortable and safe living environment for the children when they are with her. This fosters the support and upbringing of these children.
 

 We agree with the trial court. We see no reason to nullify the contract and start anew when the fundamental reasons for the original agreement still exist: The child support fosters the children’s relationship with their mother and tries to remove the monetary discrepancy between the parties. The reasons continue to support the valid deviation from the Louisiana Statutory Guidelines and the contract remains enforceable. Our jurisprudence also supports that “agreements meeting the requirements of conventional obligations and which are not adverse to the purpose and intent of child support have been held enforceable.”
 
 Ellefson v. Ellefson,
 
 616 So.2d 221, 224 (La.App. 5th Cir.1993). Here, the children are more than adequately taken care of financially. As the trial court stated, “There is no law that prohibits [this child support agreement]. Although the arrangement is unique, it is not ‘illegal’ or
 
 ‘contra bonos mores
 
 ’ or
 
 ‘void ab initio.’
 
 ”
 

 We also find that the reasons stated in the 2007 Agreement result in a judicial confession. It is well established that an amount stipulated to in a consent judgment is a judicial admission that the recipient is entitled to that amount.
 
 See Stogner v. Stogner,
 
 1998-3044 (La.07/07/99), 739 So.2d 762.
 
 See also Laiche v. Laiche,
 
 231 So.2d 647 (La.App. 1st Cir.1970),
 
 writ denied,
 
 256 La. 80, 235 So.2d 101 (La.1970). Here, both parties agreed to deviate from the Louisiana Child Support Guidelines for the stated reasons which are supported by the record and we find that this is not against public policy.
 
 Stog-ner, supra.
 
 In short, to complain now that the trial court should |7have enforced and imposed the Louisiana Statutory Guidelines on the parties is hypocritical. Accordingly, we cannot find that the trial court erred in its decision.
 
 [1]
 

 Furthermore, despite the trial court’s finding that two of the contract provisions were unenforceable, the trial court correctly held that the 2007 Agreement was not nullified as a whole. Nullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision. La. C.C. art. 2034.
 
 [2]
 

 
 *602
 

 Francine ’s Issues on Appeal
 

 Although a modest increase in Francine’s salary compared to Willard’s net worth, the trial court did not err in finding that it was a change in circumstance worthy of child support modification. Louisiana R.S. 9:311 A(l) states that: “An award for support shall not be modified unless the party seeking the modification shows a material change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award.” Here, the record indicates that Francine had an increase in her earnings and the trial court held it warranted a reduction in child support. Undoubtedly, Francine is able to contribute to her children’s well-being with her own earnings, in addition to the child support, and continue to support herself. When a trial court in an action to | «modify support, considers the circumstances under which the initial award was made, the trial court is weighing and comparing past circumstances and present circumstances in order to deduce what modified amount will satisfy the support obligation in the future.
 
 Hudson v. Hudson,
 
 421 So.2d 1188 (La.App. 2d Cir. 1982). The record supports the trial court’s fact-finding and as such we cannot find it manifestly erroneous.
 

 Finally, Francine argues that the sanctions clause in the 2007 Agreement allows her to seek attorney’s fees and reimbursement of litigation expenses since she did not initialize these proceedings. However, as noted previously, the sanctions were premised on a provision that was against public policy. Regardless of language to the contrary, child support judgments are always subject to modification following a showing of a change of circumstances.
 
 Ellefson, supra; also Stogner, supra.
 
 The limited circumstances in which either Willard or Francine could seek child support modification were too restrictive and, as a result, the sanctions associated with that provision must also be invalidated. In other words, one should not be penalized for seeking a child support modification. While we empathize with the prolonged child custody battle and its toll, financially and emotionally on
 
 all
 
 parties involved, we are bound by the law. Accordingly, we agree with the trial court.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the trial court’s decision in its entirety. Costs are assessed equally between Francine and Willard Robertson.
 

 AFFIRMED.
 

 [1]
 

 . The state guidelines were enacted because "children should not be the economic victims of divorce or out-of-wedlock birth.” La. R.S. 9:315(A). Clearly, that is not the problem in the instant case and the state guidelines may not have provided an adequate solution.
 

 [2]
 

 . We find the Revision Comment instructive as it states, “[This article] directs the court to
 
 *602
 
 consider the totality of the parties' intentions before annulling the agreement when only a portion of it is null.”